## In re BARNES.

### No. 11,756; March 2, 1888.

16 Pac. 896.

**Attorney—Disbarment for Offering Money for Testimony.**—An attorney, believing a certain paper to be a forgery, hired an expert to examine it. The expert expressed his doubt as to the forgery; and the attorney, supposing that the expert believed the paper a forgery, and only expressed doubt to extort money, offered him a large sum of money to testify in regard to the forgery. Held, that such conduct was subject to criticism, but not sufficient ground for disbarment.

**Attorney—Disbarment—Procuring Person to Steal Papers.**—The respondent was charged with procuring one to steal a paper, but the only evidence against him was the testimony of the party who lost the paper that the person who stole it said that respondent had hired him to steal it. Held, that such statement was not evidence, and the respondent could not be disbarred on the charge.

Application to disbar.

This was an application to disbar W. H. L. Barnes, upon accusations preferred by James L. Crittenden. complainant. The respondent, Barnes, is charged in and by the complaint— First, with having "been guilty of the violation of his oath as an attorney and counselor at law"; secondly, with having "been guilty of the violation of his duty as an attorney and counselor at law"; thirdly, with having been guilty of "corrupt practices, tending to degrade and defeat the due administration of justice." The complaint further specifies two instances wherein said Barnes was guilty as alleged, to wit: First. That said Barnes, after M. Gumpel had informed him that certain letters and a contract of marriage introduced in evidence in the case of Sharon v. Sharon were written and signed by William Sharon, in his opinion, and that he (M. Gumpel) could not testify in favor of William Sharon, and against the genuineness of said letters and contract, "willfully and corruptly tried to induce said M. Gumpel to commit perjury, and swear that the signature of said Sharon to said contract was not his genuine signature, and that said letters were not written or signed by said Sharon, and willfully and corruptly offered to pay said M. Gumpel a large sum of

money if said M. Gumpel would so swear, which said M. Gumpel declined to do.'' Secondly. That respondent, Barnes, requested one McLaughlin, the clerk of George W. Tyler, to go to the office of said Tyler and procure a written contract which he (Barnes) supposed to have been made between George W. Tyler and M. Gumpel, and to take it and deliver it to him (Barnes) for money which he (Barnes) promised to pay; and that said McLaughlin, in order to earn the money so corruptly offered him by said Barnes, went to the office of said Tyler in the night-time, in the absence of Tyler, and stole therefrom a private paper belonging to Tyler, purporting to be such contract, and delivered the same to said Barnes, who paid said McLaughlin therefor the sum of twenty-five thousand dollars; and that said Barnes paid said money to said McLaughlin for said contract with the corrupt intent to use the same in evidence in the suit of Sharon v. Sharon; and that said Barnes did afterward use said paper as evidence in said suit of Sharon v. Sharon. The respondent pleads not guilty to these charges.

James L. Crittenden for complainant; John H. Curry for respondent.

TEMPLE, J.—I think the accusation should be dismissed. As to the first specification, the charge as made has not been established by evidence which satisfies my judgment. It does appear, however, that Gumpel was employed by the defendant in the case of Sharon v. Sharon to examine the alleged marriage contract, with the expectation that he would be called as a witness if his opinion was favorable. After the examination had been made, the respondent was induced to believe the result favorable to his wishes, and Gumpel was paid fifteen hundred dollars on account. Gumpel from the first talked of his poverty, of his urgent need for money, and insisted that it was a great case, and he expected to be liberally paid, and that there should be an agreement that his bill should be paid whatever it might be, and sometimes argued against the views of respondent in regard to the genuineness of the signature. Respondent, however, never supposed that Gumpel had any doubts as to the question of forgery, but thought he was merely attempting to get more money. Never-

theless, he continued to rely upon Gumpel, and paid him some money after this evidence of venality, and even intimated that he would probably be satisfied as to his compensation. Now, it must be borne in mind that Gumpel was employed to assist and advise the defense. On any other hypothesis the sum he had already received would be extortionate, or must have been received for the testimony he was to give. However much it may be regretted, we know that experts are often employed and paid large sums for their services, and practically for their testimony; for it often requires labor as well as skill to examine and determine the question upon which an opinion is to be given, and sometimes to prepare an effective exhibit of the facts for the court. The money paid was understood by both parties to be for such services, and I do not believe that Barnes thought that the money would cause the witness to change his opinion or his evidence as to the genuineness of the signature. The respondent knew, or thought he did, that the signature was a forgery, and he seems never to have doubted that Gumpel was of the same opinion, and he regarded, as he well might, the occasional arguments of the witness on the other side as mere intimations that he wanted some money. Under such circumstances, no doubt, it would have been more in accordance with exalted ideas of propriety for Barnes to have denounced the witness, and dismissed him, but I doubt whether many practitioners would have acted very differently from the course of the respondent. Lawyers meet and are compelled to contend with all sorts of people. They have in their hands the interests of their client, and they should not permit him to lose the benefit of important testimony upon any refined ideas of propriety. Frequently witnesses whose testimony is essential know the value of their position, and too often attempt to realize upon it. It is a trying thing for an attorney to be placed in a situation where he must deal with such a witness; and, while an honorable attorney would be careful to make no payments or promises which could affect the truthfulness of the evidence, all would try to retain the witness, however much he would be compelled to despise him. I have considered the matter entirely from the standpoint of the respondent; and while I think his conduct, according to his own testimony,

may justly be criticised, I do not think it sufficient ground for a disbarment.

As to the other charge, it is still more proper to regard it entirely as the facts appeared to the respondent. He is not more guilty than he would have been had the document been genuine, and availed to expose the forgery of the signature of Sharon, and that it was being supported by perjured testimony. The denouement—the discomfiture of Barnes—showing that he had been duped, must be left out of view. If the facts had proven to be as he believed they were, and the result as he anticipated, most people, I think, would have applauded his conduct. There is no evidence in this record to show that Barnes advised McLaughlin to steal the paper, or induced him in any way to take it from the custody of Tyler. That idea is founded, so far as this case is concerned, entirely upon the statements of Tyler as to what McLaughlin told him. That, of course, is not evidence, and, in my judgment, not worthy of credence if it were. Had that fact appeared by legal and creditable evidence, I agree that Barnes' position would be indefensible. It is bad enough, no doubt, as it is. But detective work must be judged by an ethics of its own. It is deemed proper to deceive and practice stratagems upon a public enemy, and the criminal is the common enemy of all. I concur in discharging the accused, while regretting that one so high in the profession should have been guilty of conduct which requires explanation.

I think the respondent should neither be disbarred nor suspended. It is fair to repeat that all the facts have been viewed as I think they appeared to respondent. The allusions to Gumpel must be understood in that light. The accusation is dismissed.

McFARLAND, J., SHARPSTEIN, J., and PATERSON, J.—We concur in the judgment, because in our opinion, the evidence utterly fails to show any conduct on the part of respondent for which he should either be disbarred or suspended.

THORNTON, J.—I concur in the conclusion reached in Justice Temple's opinion on the second specification of the accusation, which relates to the Tyler-Gumpel contract. I do

not concur in the conclusion reached as to the first specification.

Searls, C. J., was not present at the hearing, and did not participate in the decision.