IN RE O'KEEFE.

(No. 3,437.)

(Submitted June 22, 1914.   Decided June 27, 1914.)

[142 Pac. 638.]

*Attorneys — Disbarment — Professional Misconduct—Estates— Culpable Negligence—Purchasing Testimony—Public Policy.*

Attorneys—Estates—Culpable Negligence—Punishment.
   1.   Though an attorney, who in his dealings with an estate for the administrator of which he was acting ignored practically every statutory provision designed to protect estates from spoliation, was deserving of severe censure, he may not be said to have been guilty of malpractice where the evidence disclosed an absence of evil intent and that the estate was not defrauded nor the district judge deceived by reason of his culpable negligence.
   [As to grounds in general for disbarment of attorneys, see note in 45 Am. St. Rep. 71.]

Same—Purchasing Testimony—Public Policy.
   2.   *Held*, as a matter of public policy, that an attorney is never justified in buying testimony, even though true.

Same—Purchasing Testimony—Case at Bar—Suspension.
   3.   An attorney, though honestly believing that unless he complied with the demand of two witnesses upon whose evidence a successful determination of his client's cause largely depended and who threatened to leave the jurisdiction in case of refusal, to guarantee them the payment of $250 out of any judgment the latter might recover (of which arrangement court and jury were made cognizant during trial, which resulted in plaintiff's favor), he would suffer defeat,

*held* guilty of professional misconduct, punishable, in view of mitigating circumstances, by a thirty-day suspension.

[As to burden of proof in action against attorney for negligence or willful violation of duty, see notes in 2 Ann. Cas. 603; 14 Ann. Cas. 342.]

PROCEEDINGS for the disbarment of R. E. O'Keefe, an attorney at law. Judgment of suspension for the period of thirty days.

*Messrs. Purcell & Horsky* submitted a brief in behalf of Respondent and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, R. E. O'Keefe, a member of the bar of this state, stands charged with malpractice in three particulars, to-wit: (1) That he filed in the district court of Blaine county an affidavit falsely accusing W. B. Sands, also a member of the bar of this state, with unprofessional conduct; (2) that, as attorney for the estate of Pauline Lane, he purposely conducted the proceedings therein in an indefinite, uncertain and incomplete manner, with the intent that the administrator thereof might defraud the same; (3) that he, while acting as attorney for the plaintiff in a certain action then pending in the district court of Blaine county, and with the intent wrongfully and corruptly to procure John Nakladahl and Annie Nakladahl to become interested in said action as witnesses for said plaintiff and by their testimony to corruptly insure a verdict for said plaintiff, did write and send certain letters promising to pay said Nakladahls out of any judgment recovered by plaintiff in said action the sum of $250 over and above their expenses, in consideration of their appearance as witnesses at the trial on behalf of plaintiff. These charges were referred for investigation to Ira T. Wight, Esq., as a special commissioner of this court, with directions to report his proceedings and recommendations in the premises. This has been done. The respondent has been heard in person and by counsel before us, and the cause now stands for final disposition upon the record presented.

At the outset we desire to express our appreciation and approval of the manner in which the commissioner has discharged

the delicate and difficult duty imposed upon him. It is quite clear to be seen that without a firm hand the proceedings would have degenerated into a mere exhibition of ill feeling with charges and counter-charges in no wise relevant to the inquiry. The commissioner, however, with eminent fairness has succeeded in placing before us all that is material to the accusation and all that can fairly make for the exoneration of respondent. His conclusions are just and merciful, and we proceed to show why, in the judgment of this court, they ought to be, and are, adopted.

1. The affidavit of respondent filed in the district court of Blaine county in the case of *Smith* v. *Kirk*, averred that W. B. Sands "falsely and fraudulently, and with the intent and purpose to mislead and deceive the Honorable Frank N. Utter, judge of this court, did procure to be made, and make, certain false oral statements to the said judge, and did exhibit and read to the said * * * judge * * * certain false affidavits and statements in writing * * * wherein and whereby the said W. B. Sands procured" from said Judge a certain order in said cause. The commissioner, in considering this charge, declined to pass upon the actual merits of the controversy between counsel in the case of *Smith* v. *Kirk*, but held that, under all the circumstances disclosed by the evidence, no sufficient ground was made to appear for the disbarment of the respondent. In this we concur, remarking, however, that while there was reason for the respondent to challenge the accuracy of Mr. Sands' representations to Judge Utter, the drastic conclusions of the affidavit were not warranted by any specific averments.

2. The details of the second charge need not be specified. [1] Suffice it to say that practically every statutory provision designed to protect estates from spoliation by giving record information of their character and condition was ignored, and ignored so effectively that the inference of sinister motive was inevitable. A consideration of the evidence, however, prompts the conclusion that no evil intent existed on the part of anyone "to loot the estate or deprive the infant heir of any of her inheritance"; that, in point of fact, she was not defrauded, but was treated by the administrator fairly and generously, and that

the district judge was not deceived. This being true, the respondent is entitled to have the second charge dismissed.

The respondent insists that the commissioner's recommendation of censure in connection with a dismissal of this charge is unjust, and counsel suggest that: "If respondent had been charged with carelessness or incompetency, perhaps he could have met that charge by showing that all errors and omissions had been called to the attention of the court and considered too trivial to need correction." No such showing would have availed, for errors and omissions such as are here disclosed cannot be considered too trivial for correction. We will not do respondent the injustice of imputing to him a degree of incompetence so gross, and, though the showing of actual fair dealing and honesty has avoided the inference of sinister motive, we cannot overlook the only alternative of culpable negligence; for we cannot, even by inference, set the seal of our approval upon such haphazard and irresponsible methods in dealing with estates.

One of the things imputed to respondent in connection with this charge is that, while the estate was pending, he was directly and financially interested in continuing the house of prostitution conducted by Pauline Lane at the time of her death, and received large sums of money for using his influence to prevent prosecution of the inmates thereof. The respondent resents this imputation more than any, and keenly feels that the commissioner's finding of no justification for it in the evidence is not ample. We hardly see how the commissioner could have done more; but for the satisfaction of the respondent we are glad to say that, not only is there no justification for this imputation in the evidence, but that it appears to have been wholly inexcusable.

3. As presenting the view of the third charge most favorable to the respondent, we state the facts substantially as asserted by his counsel. Some time prior to October 24, 1913, one John [2, 3] Flynn committed a brutal and dangerous assault upon E. E. McIntosh in the presence of John and Annie Nakladahl. McIntosh was rendered unconscious from the first blow or blows administered by Flynn, and the Nakladahls were therefore the

only witnesses who could testify impartially to the particulars. On October 24, 1913, McIntosh commenced his action for damages against Flynn, and almost immediately thereafter the Nakladahls began demanding money of McIntosh. They were transients, looking for public lands on which to locate, and some time before the trial were seen at the depot by McIntosh about to leave for parts unknown. They demanded of McIntosh, as a condition to their advising him of their whereabouts and to their appearance as witnesses in his behalf, that he guarantee them $250 out of any judgment he might recover in his action. McIntosh promised to do this, and they agreed to communicate with him upon arrival at their destination if his promise then appealed to them as satisfactory. Thereafter McIntosh received from one Parrotte the following:

"Great Falls, Mont., Nov. 14th, 1913.

"Mr. Ed. C. McIntosh,

"Chinook, Mont.

"Dear Sir: There are now living with me a family named Nakladahl, recently of your town. From the story they have told me of a fracas in which you figured prominently, I imagine you have a cinch on large damages with their assistance. Without this, I fancy, your chances are not particularly good, since they were the only witnesses to the assault, and your opponent's word in law is as good as yours. Now, unfortunately for you, they fancy that you have not acted as handsomely as circumstances should warrant. This being the case, it would seem to be to your interest to treat them fairly. Of course they can be subpoenaed and compelled to testify, but when a person is *made to speak* it is easy for one to *forget* the most important part. Now, it is possible that you place some value upon your life, and as the lady certainly saved it by her intercession I have assured them that you will prove appreciative and reward them abundantly. They, however, insist upon a *legal* guaranty. Should you deem it worth while to write me upon the subject, I will gladly use my influence in your behalf.

"Obediently yours,

"James E. F. Parrotte."

This letter was taken by McIntosh to the respondent, who answered it as follows:

"Mr. James E. F. Parrotte,

"Great Falls, Mont.

"Dear Sir: Mr. E. E. McIntosh has handed me for answer your letter of the 14th instant relative to John Nakladahl and wife, as I am attorney for Mr. McIntosh in the prosecution of the damage suit against Flynn. Mr. McIntosh is willing to pay these people $250 in cash if he gets a favorable judgment against Flynn, and is willing to pay them their regular witness fees in any event, and will make them a guaranty of any kind that Mr. Nakladahl may be satisfied with. You understand that Mr. McIntosh is a poor man and that it would be impossible for him to advance this money now. I wish you would endeavor to get these people to believe that Mr. McIntosh will do the right thing with them in case he gets a judgment against Flynn. Flynn is well fixed, and there will be no question of collecting the money from him in case we get judgment. If this letter is not a sufficient guaranty please have Mr. Nakladahl suggest what he desires further in that respect, and very much oblige,

"Yours very truly,

"R. E. O'KEEFE."

Parrotte replied, insisting upon a guaranty drawn up in legal form, securing the Nakladahls the sum of $250 over and above expenses, even though McIntosh be awarded but enough to pay them and counsel, and that the respondent secure them against any seizure of the award by any possible creditor. Mr. O'Keefe's response was this:

"Dec. 3, 1913.

"To John Nakladahl and Annie Nakladahl,

"Great Falls, Montana:

"As attorney for Mr. E. E. McIntosh, and in furtherance of negotiations and agreement heretobefore had with you, I make .you the following guaranty: You having indicated a desire not to appear in our court to testify in the case of McIntosh against Flynn without being reimbursed in the sum of $250 therefor, and Mr. McIntosh having agreed under the circumstances to pay

you $250 over and above your expenses out of any judgment which he may recover in said action against said Flynn. Now, in consideration of the premises and of your refusal to testify in said action without being so recompensed and guaranteed, as attorney for Mr. McIntosh I hereby guarantee to you that I will pay you for him, out of any moneys that may come into my hands as his attorney in settlement of any judgment which he may recover against said Flynn, the full sum of $250, which sum I hereby guarantee to withhold out of any moneys which said McIntosh may receive in settlement of any judgment recovered against said Flynn and to pay to you or your order, if, and in consideration of, your appearing as witnesses on behalf of the plaintiff McIntosh in the suit above mentioned at the time of the trial of said action.        Respectfully,

"R. E. O'KEEFE,

"Attorney for E. E. McIntosh."

These letters from respondent to Parrotte form the basis of the third charge, and respondent does not deny their authorship. He presents, by way of justification, however, one legal and various fact considerations to which we shall advert.

His fact considerations are that the Nakladahls had threatened, if compelled to testify, to forget what had happened, and he had reason to believe, and did believe, their attitude in this respect had been prompted by the agents of Flynn; that he never intended to pay them anything, and so worded his letter as to advise anyone of the involuntary character of the promise contained therein; that he had no intention or purpose to procure the Nakladahls to testify falsely or to in any wise color their testimony, but was actuated solely with the desire to protect the rights of his client by insuring their testimony to the truth necessary for the establishment of his cause; that he felt this to be a right and proper discharge of his duty to his client; that the Nakladahls did not speak English well, and in the giving of testimony, their illustrations by physical gesture would be of more importance than their statements, hence their depositions would be of comparative little value; that upon the trial of the cause of *McIntosh* v. *Flynn* all these letters were produced in

court, read to the jury, and the circumstances connected with the writing of the same were fully disclosed to the judge presiding and to the jury sitting in the cause; that prior to the trial respondent, supposing Judge Utter would preside at the trial, made a similar disclosure to Judge Utter; that upon the trial respondent announced, in the presence of the Nakladahls, his intention not to pay them any part of the money promised; that at the very time Parrotte was communicating with respondent, Parrotte was also communicating with Flynn, and, as a result, counsel for Flynn went to Great Falls, called upon the Nakladahls, and purloined from them the letter which had been written by respondent to them; that McIntosh was clearly entitled to a verdict from Flynn in said cause, as is evidenced by the fact that Flynn pleaded guilty to a criminal charge of which the assault involved in said civil action was the basis, and as evidenced by the further fact that after the jury had heard all the testimony touching the circumstances of the assault, as well as the circumstances connected with the writing of the letters, they returned a verdict for McIntosh and against Flynn in the sum of $2,000, upon which verdict judgment was entered, and which judgment was paid by Flynn with little, if any delay, and with no attempt to appeal or seek a review thereof; that the testimony given upon the trial of said cause by the Nakladahls was the truth, and nothing but the truth, and that it never was the intent or purpose of the respondent that any other testimony than the truth should be given by them; and, finally, that the reputation of respondent as a person of good moral character is established by the testimony of leading citizens in that community.

The legal consideration presented by the respondent is that, in view of the facts above recited, he is entitled to be entirely acquitted and discharged of the accusation, for the reason that the writing of these letters for the purpose of securing truthful testimony is not an act of malpractice nor any infraction of legal ethics. In support of this contention we are cited to Marvelle on Legal Ethics, pages 116–119, and to the California case of *In re Barnes,* 2 Cal. Unrep. 847, 16 Pac. 896. In the latter

authority we find the following remarkable language: "Lawyers meet and are compelled to contend with all sorts of people. They have in their hands the interests of their client, and they should not permit him to lose the benefit of important testimony upon any refined ideas of propriety. Frequently witnesses whose testimony is essential know the value of their position, and too often attempt to realize upon it. It is a trying thing for an attorney to be placed in a situation where he must deal with such a witness; and, while an honorable attorney would be careful to make no payments or promises which could affect the truthfulness of the evidence, all would try to retain the witness, however much he would be compelled to despise him." We are not impressed with this reasoning; its application to the present case proceeds upon the mistaken notion that the attorney's duty to his client is superior to every consideration of public policy, and its inadequacy is revealed by the fact that the court held the conduct of Barnes to be open to criticism, though justified by the circumstances. A sufficient answer, we think, is stated by the commissioner in his report upon this aspect of the case: "An attorney's duty to his client is a solemn obligation, but it has never been held to be greater than the law itself. However just an attorney may believe his client's claim to be, he may not liquidate it by force of arms, by bribery or any other unlawful means. * * * An expert may be paid large sums for his testimony without it being considered bribery, but the theory of the law as to expert witnesses and witnesses testifying to matters of unscientific fact is not the same. The payment of large sums to an expert is considered in the nature of an employment for rendition of services. If large sums may be paid or promised to an ordinary witness, and that in itself not be condemned, then in every case where it appears that money was so paid or promised the court will be confronted with the difficult, if not impossible, task of probing into the brain of the promisor to determine whether such promise was to induce the witness to testify to the truth or to a falsehood. It is contrary to the presumptions of law that a witness must be hired to speak the truth, and, although there may be cases where a witness

refuses to testify to the truth without an inducement, if the rule be established that such inducement be permissible, the floodgates of fraud and bribery will be thrown wide.''

The letters in question were not merely a promise to pay, but they made the payment contingent upon the successful outcome of the case. The fact that no legal liability was created by them, though they were drafted so as to deceive the Nakladahls into the belief that a valid promise had been made, does not meet the case. The material question is what effect such promises are calculated to produce upon a witness or upon his testimony, and it cannot be gainsaid that this effect is not in the direction of plain, unvarnished truth. In such matters the exigencies of any given cause must yield to the larger demands of public good, and we decline to hold that it is proper in this state for an attorney to buy testimony, whether true or false.

But the existence of reputable authority for the course pursued by the respondent, the exigencies of his cause, his apparent honesty of purpose, his belief that his witnesses were being stolen from him—all concur, in our judgment, to largely mitigate his conduct, and we feel that an order of disbarment would not be justified. We must, however, emphasize the views we have expressed with regard to the third charge, and this can only be done by the imposition of some punishment.

It is therefore ordered that Mr. R. E. O'Keefe, a member of the bar of this state, be suspended as attorney and counselor for the period of thirty days, at the expiration of which time he may resume the practice of law without further order.

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.